# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RODGER D. STEVENS, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 24-CV-0053-GKF-MTS |
| WILLIAM RANKINS, Warden, | ) ) ) |
| Respondent. | ) |

## OPINION AND ORDER

Petitioner Rodger D. Stevens, a self-represented Oklahoma prisoner,[1] petitions for a writ of habeas corpus, under 28 U.S.C. § 2254, claiming that he is unlawfully detained under the judgment entered against him in Creek (Bristow) County District Court Case No. CF-2016-412. In that case, a jury convicted Stevens of performing lewd acts in the presence of a minor, after former conviction of two or more felonies, and the trial court imposed a life sentence. Stevens claims: (1) his appellate counsel provided constitutionally deficient representation on direct appeal, depriving him of his Sixth Amendment right to the effective assistance of counsel; and (2) the prosecutor withheld exculpatory evidence, depriving him of his Sixth and Fourteenth Amendment rights to a fair trial and due process. Dkt. 1, at 5-8. Respondent moves to dismiss the Petition, asserting that Stevens did not file it within the one-year statute of limitations prescribed in 28 U.S.C. § 2244(d)(1). Having considered the Petition (Dkt. 1), the Motion to Dismiss and Brief in Support (Dkts. 8, 9), the Response (Dkt. 10), the state-court record, and applicable law, the Court grants Respondent's Motion and dismisses the Petition.

---

[1] Because Stevens appears without counsel, the Court liberally construes his filings, but the Court does so without crafting arguments for him. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

I.

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year statute of limitations for state prisoners seeking federal habeas review under 28 U.S.C. § 2254. The limitations period "run[s] from the latest of" one of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Section 2244(d)(1)(A) provides the most common triggering event for the limitations period, and a habeas petitioner bears the burden to show that a different provision applies. *See Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000) (noting that "[t]he limitations period generally runs from the date on which the state judgment became final after direct appeal" as provided in § 2244(d)(1)(A)); *Chavez v. Workman*, No. 05-CV-0554-HDC-PJC, 2006 WL 2251718, at *3 (N.D. Okla. Aug. 4, 2006) (unpublished)[2] (reasoning that a habeas petitioner bears some burden to show that the limitations period commenced at some date other than the date his or her judgment became final).

Regardless of which event triggers the commencement of the limitations period, that period is tolled for "[t]he time during which a properly filed application for State post-conviction or other

---

[2] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Federal courts also may toll the limitations period for equitable reasons, *Holland v. Florida*, 560 U.S. 631, 645 (2010), and may excuse noncompliance with the statute of limitations if the petitioner asserts a credible claim of actual innocence, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

## II.

Respondent urges the Court to dismiss the Petition because: (1) the Petition is untimely under § 2244(d)(1)(A) and Stevens has not shown that any other provision of § 2244(d)(1) applies; (2) Stevens cannot benefit from statutory tolling; and (3) Stevens has not demonstrated any facts or circumstances that would support equitable tolling of the limitations period or application of *Perkins*'s equitable exception. Dkt. 9, at 13-30.[3]

Stevens contends he timely filed the Petition because he filed an application for postconviction relief in state district court on October 18, 2022, and the limitations period was tolled while that application was pending. Dkt. 1, at 14-15; Dkt. 10, at 8-10. Stevens also argues that *Perkins*'s actual-innocence exception applies because he "has maintained his innocence throughout all proceedings and his propositions have been under Actual Innocence from the start of him filing his Motions and his Application for Post-Conviction Relief." Dkt. 10, at 6-8, 10. In support of his actual-innocence claim, Stevens appears to argue that "exculpatory" text messages—messages that the prosecutor allegedly withheld from the defense, and that trial counsel did not present at trial—would prove his innocence by showing that he was not alone with the minor victim on two specific dates in October 2016. Dkt. 1-1, at 49-50; Dkt. 9-25, at 1-2; Dkt. 10, at 8.

---

[3] For consistency, the Court's citations refer to the CM/ECF header pagination.

**A.**

The Petition is not timely under § 2244(d)(1)(A).[4] Under that provision, the limitations period begins to run on the date that the challenged state-court judgment becomes final. "For petitioners who pursue direct review all the way to [the United States Supreme] Court, the judgment becomes final at the 'conclusion of direct review'—when [the Supreme] Court affirms a conviction on the merits or denies a petition for certiorari." *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). "For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires." *Id.*

Following a trial in October 2017, a jury found Stevens guilty of performing lewd acts in the presence of a minor, after former conviction of two or more felonies, and recommended a life sentence. Dkts. 9-3, 9-6.[5] The trial court sentenced Stevens accordingly. *Id.* Stevens filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), and the OCCA affirmed his judgment on May 16, 2019. Dkt. 1-1, at 1-18; Dkt. 9-10. Stevens did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court. Dkt. 1, at 3. His judgment

---

[4] Respondent generously construes the Petition as suggesting that the limitations period may be governed by § 2244(d)(1)(B). Dkt. 9, at 15-18. The Court, however, does not read any part of the Petition, or any part of the Response, as identifying facts implicating § 2244(d)(1)(B), (C), or (D), or as asserting any discernible argument that any of these provisions apply. *See* Dkts. 1, 10, generally. The Court thus confines its analysis to § 2244(d)(1)(A).

[5] Evidence submitted at the second stage of Stevens's bifurcated trial established that Stevens had three prior convictions, and the State's appellate brief describes the prior convictions as three sex offenses, including one for child sexual abuse and one for failing to register as a sex offender. Dkt. 9-8, at 29. However, it appears from the record that the jury may not have been informed of the nature of the prior offenses. *See* Dkt. 9-10, at 9 n.6 (noting that Stevens stipulated to his prior convictions during the second stage and that the trial court admitted three judgments and sentences "but informed the jury the court would not reveal what the convictions were for or submit [the judgments and sentences] for review during deliberations").

thus became final on August 14, 2019, when the time expired to seek further direct review. *Gonzalez*, 565 U.S. at 150; Sup. Ct. R. 13.1 (providing 90-day period to file petition for writ of certiorari). Stevens's limitations period, under § 2244(d)(1)(A), commenced the next day, August 15, 2019, and, absent any statutory tolling events, expired on August 17, 2020. *Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011).[6] The Court therefore finds that, absent any statutory tolling events, the Petition, filed February 2, 2024,[7] is untimely.

**B.**

Stevens cannot benefit from statutory tolling. Statutory tolling suspends the limitations period for the "time during which a properly filed application for post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that is filed in accordance with all state law procedural filing requirements. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Habteselassie v. Novak*, 209 F.3d 1208, 1210-11 (10th Cir. 2000). And the application "remains pending until the application has achieved final resolution through the State's postconviction procedures." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (internal quotation marks omitted) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)). But the application must be filed within the applicable limitations period. *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006); *see also Robinson v. Whitten*, No. 20-CV-0086-GKF-CDL, 2020 WL 7409596, at *7 (N.D. Okla. Dec. 17, 2020)

---

[6] Under *Harris*'s "anniversary method," Stevens's limitations period would have expired on August 15, 2020. *Harris*, 642 F.3d at 906 n.6. But because that was a Saturday, Stevens had until the following Monday, August 17, 2020, to file a timely habeas petition. *Id.*; Fed. R. Civ. P. 6(a)(1)(C).

[7] The Clerk of Court received the Petition on February 7, 2024. Dkt. 1, at 1. But because the prison mailbox rule applies, the Court deems the Petition filed on February 2, 2024. Dkt. 1, at 16-17; Dkt. 9, at 13; *see Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005) (discussing prison mailbox rule); Rule 3(d), *Rules Governing Section 2254 Cases in the United States District Courts*.

5

(unpublished) (noting that an application for postconviction relief or other collateral review that is filed before the limitations period begins has no tolling effect until the date the limitations period begins).

Stevens filed two motions in state district court during his limitations period, on March 30, 2020, and on August 3, 2020. Dkts. 9-11, 9-12. These motions requested the production of documents and transcripts related to his state criminal proceeding. *Id.* These motions do not qualify as tolling motions under § 2244(d)(2) because neither motion sought postconviction relief or other collateral review of his judgment. *See Wall v. Kholi*, 562 U.S. 545, 553 (2011) (concluding that the phrase "collateral review," as used in § 2244(d)(2), "means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process"); *Sudduth v. Raemisch*, 532 F. App'x 823, 823 (10th Cir. 2013) (noting that "motions for transcripts and the like do not stop the limitations clock"); *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (agreeing with federal district court "that the limitations period should not be tolled during the pendency of [petitioner's] various motions for transcripts and petitions for writs of mandamus relating to those motions").

Stevens submitted a letter to the judge on August 26, 2020, inquiring about the status of his motions for transcripts and discovery. Dkt. 9-13.[8] Nearly two years later, on May 9, 2022, Stevens filed motions requesting discovery, transcripts, and service of summonses. Dkts. 9-14, 9-

---

[8] As Respondent notes, Stevens appears to acknowledge in his letter to the judge that his AEDPA limitations period expired before August 26, 2020. Dkt. 9, at 25 n.6; *see* Dkt. 9-13 ("Because I didn't have the documents I was denied my right to appeal on the federal level. Time has ran out.").

15, 9-16, 9-17. On August 12, 2022, Stevens filed a motion to compel discovery. Dkt. 9-20.[9] Because these motions were filed after the limitations period expired and did not seek postconviction relief or judicial reexamination of his judgment or any claims, these motions also did not toll the limitations period. *Kholi*, 562 U.S. at 553; *Sudduth*, 532 F. App'x at 823; *Clark*, 468 F.3d at 714; *May*, 339 F.3d at 1237.

Stevens filed an application for postconviction relief on October 18, 2022, asserting the same claims he identifies in the Petition. Dkt. 9-24. The state district court denied the application on September 18, 2023, and the OCCA affirmed the denial of postconviction relief on December 20, 2023. Dkts. 9-35, 9-40. This application was pending in state court between October 18, 2022, and December 20, 2023.[10] But, contrary to Stevens's position, this application did not toll the limitations period because Stevens filed it more than two years after August 17, 2020, the date his limitations period expired. *Clark*, 468 F.3d at 714.

Based on the foregoing, the Court finds that Stevens cannot benefit from statutory tolling. Thus, unless he can show that equitable tolling is warranted or that *Perkins*'s equitable exception applies, the Petition shall be dismissed as barred by the statute of limitations.

---

[9] On August 25, 2022, after receiving a response from the State and an objection to the response from Stevens, the state district court denied the motion for discovery filed May 9, 2022, and the motion to compel filed August 12, 2022. Dkt. 9-21. In so doing, the state district court found that Stevens "failed to show that the State is in possession of any exculpatory evidence" and "failed to show that all discovery requests made by Petitioner/Defendant Roger Dale Stevens prior to trial were not sufficiently met by the State." *Id.* at 2.

[10] Stevens filed additional miscellaneous motions and applications while his application for postconviction relief was pending, but none qualifies as a tolling motion because all were filed after his limitations period expired and none sought postconviction relief or other collateral review. Dkts. 9-29 (motion to compel), 9-32 (application for writ of mandamus, filed in state district court), 9-33 (application for writ of mandamus filed in OCCA); *see Kholi*, 562 U.S. at 553; *Sudduth*, 532 F. App'x at 823; *Clark*, 468 F.3d at 714; *May*, 339 F.3d at 1237.

## C.

Stevens has not shown that the Petition should be deemed timely through equitable tolling or that the untimeliness of the Petition should be excused under *Perkins*'s equitable exception.

### 1.

A petitioner who seeks equitable tolling bears a "strong burden" (1) to identify specific facts establishing that he diligently pursued his federal claims and (2) to show that extraordinary circumstances prevented him from filing a federal habeas petition before the limitations period expired. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). Even applying the rule of liberal construction, the Court discerns no arguments in the Petition or the Response suggesting that Stevens is requesting equitable tolling. *See* Dkts. 1, 10, generally. Because it is his burden to show that equity favors extending the limitations period, this is reason enough to conclude that equitable tolling is not warranted. *See, e.g.*, *Horton v. Tuggle*, No. 19-CV-255-JFH-KEW, 2021 WL 767862, at *4 (E.D. Okla. Feb. 26, 2021) (unpublished) ("Because Petitioner has failed to allege or argue equitable tolling, he is not entitled to consideration of such relief."); *Long v. Crow*, No. CV-19-737-D, 2019 WL 5295554, at *3 (W.D. Okla. Sept. 19, 2019) (concluding petitioner was not entitled to equitable tolling especially where he failed to acknowledge the untimeliness of his petition or explain why he was entitled to equitable tolling), *report and recommendation adopted by*, No. CIV-19-737-D, 2019 WL 5295529 (W.D. Okla. Oct. 18, 2019) (unpublished).

Moreover, even if the Court could generously construe Stevens's filings as asserting an argument for equitable tolling, the Court would reject that argument because the record shows that Stevens did not diligently pursue his federal claims. As previously stated, Stevens identifies two claims in the Petition. First, he claims his appellate counsel provided constitutionally deficient representation by failing to fully investigate his case and by failing to argue that trial counsel was

8

ineffective "for not acquiring and presenting the missing exculpatory evidence in the form of withheld, missing text messages." Dkt. 1, at 6. Second, he claims the prosecutor violated his constitutional right to a fair trial by withholding exculpatory evidence—specifically, "the full content of the text messages from phones owned by [M.D., the victim's mother] and Stevens." *Id.* at 8. Stevens alleges that he did not raise these claims on direct appeal because his appellate counsel "refused" to raise them. *Id.* at 7-8.

The record of state-court proceedings demonstrates that Stevens knew the facts supporting his federal claims either during his trial in 2017, or, at the very latest, at the conclusion of his direct appeal in 2019. For example, in a sworn affidavit that Stevens signed in October 2022, and submitted in support of his application for postconviction relief, he states, in relevant part, "I repeatedly asked my trial counsel Jason Serner, for all texts from both phones and never received them" and that "[t]here is documentation from James Lockard my appellate counsel, where I am asking for texts and copies of all texts from my client files." Dkt. 1-1, at 66-67. The "documentation" from appellate counsel referenced in Stevens's affidavit appears to be a letter from Lockard, dated June 27, 2018, wherein Lockard explained that he had reviewed text messages from Serner's file and "was unable to make out a claim of ineffective assistance of trial counsel for failure to utilize the messages that were left out." Dkt. 9-28, at 1. Lockard further stated in the letter, "While there were messages that I think could have been helpful to you, they could also have been harmful to you, to the point that the [OCCA] would have determined that trial counsel exercised reasonable trial strategy in choosing not to offer them." *Id.* Lockard enclosed with the letter a copy of several text messages he found in trial counsel's file. *Id.* Lockard also told Stevens that if Stevens disagreed with Lockard's "decision not to submit these messages" in support of Stevens's direct appeal, Stevens could raise an ineffective assistance of appellate counsel claim in

9

postconviction proceedings and attach the enclosed text messages "to any further motions you file after the direct appeal." *Id.* At the very latest then, Stevens knew, or should have known, at the conclusion of his direct appeal in 2019, that appellate counsel did not raise the ineffective assistance of trial counsel claim that Stevens identifies in support of his Sixth Amendment claim.

Further, the state district court's order denying postconviction relief strongly suggests that Stevens knew, or reasonably should have known, at the time of his trial in 2017, the facts that he believes support his allegations that the prosecutor withheld exculpatory text messages, and that trial counsel was ineffective for not acquiring or presenting "all" text messages to the jury that were found on his phone and M.D.'s phone. In denying state postconviction relief, the state district court found, in relevant part, that trial counsel and appellate counsel both investigated the facts of Stevens's case and expressed the same concerns about presenting certain text messages at trial. Dkt. 9-35, at 5. The state district court stated:

> Notably, appellate counsel's stated concern with the excluded text messages were likewise expressed by Defendant's trial counsel. On October 16, 2017, a hearing was held by the trial court. (the day prior to the commencement of the jury trial on October 17, 2017). During the hearing, Defendant's trial counsel sought to prevent the introduction of <u>ANY</u> text messages. Defendant's trial counsel contended that the text messages were more prejudicial than probative. Both the State and Defendant's trial counsel allowed that there were voluminous text messages that at a minimum implicated Defendant in other bad acts or wrongs. Ultimately, the Court allowed the State to introduce only 9 text messages as the Court found they were probative of the issues then at hand. However, the Court denied the introduction of the photographs attached to the text messages.

*Id.* (internal citations to pretrial hearing transcript omitted). The state district court made two additional findings that are even more damaging to any potential diligence argument Stevens could make in support of a request for equitable tolling:

> During the course of the October 16, 2017 hearing, Defendant's trial counsel acknowledged to the trial court, that the State had provided Defendant's trial counsel with all of the text messages in the State's file and that Defendant's trial counsel was in receipt of the text messages, pursuant to Defendant's trial counsel's discovery request.

10

>Further, Defendant's trial counsel had access to all text messages pulled from Defendant's phone.

*Id.* at 7-8. (paragraph numbers and internal citation to pretrial hearing transcript omitted).[11]

On this record, and even assuming Stevens had identified any extraordinary circumstances in support of a request for equitable tolling (which he has not), there is no basis for this Court to find that Stevens diligently pursued his federal claims by waiting more than three years after the OCCA affirmed his judgment (and more than two years after his AEDPA deadline expired) to first seek postconviction relief as to those claims. To the extent this Court could generously construe any portion of Stevens's filings as requesting equitable tolling, the Court therefore denies that request.

**2.**

Stevens does assert, in his Response, that this Court should excuse the untimeliness of his Petition under the actual-innocence exception recognized in *Perkins*. The *Perkins* Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." 393 U.S. at 386. "Also known as the 'miscarriage of justice' exception, the actual-innocence exception applies

---

[11] These state-court factual findings are presumed correct absent clear and convincing evidence to rebut that presumption. 28 U.S.C. § 2254(e)(1); *Fontenot v. Crow*, 4 F.4th 982, 1032 (10th Cir. 2021). And at least some of Stevens's allegations buttress, rather than rebut, the state district court's findings. *See, e.g.*, Dkt. 1-1 at 42-43 (alleging the outcome of trial and direct appeal would have been different if trial counsel had honored Stevens's request to investigate "the missing phone records" and appellate counsel had honored his request to argue that trial counsel was ineffective for failing "to utilize the missing text messages and for failing to submit the messages that were of exculpatory nature"); Dkt. 9-3, at 6 (asserting, in postconviction reply brief, that Stevens's claim that the prosecutor withheld exculpatory text messages "makes perfect sense because he had no access to the text messages due to being incarcerated at the time of discovery and his trial counsel not presenting him with the discovery"). The state district court's factual findings are equally damaging to Stevens's substantive claims, but because the statute of limitations bars relief, the Court does not reach the merits of either claim.

'when a petitioner can demonstrate that he is actually innocent of the crime of conviction.'" *Pacheco v. Habti*, 62 F.4th 1233, 1241 (10th Cir. 2023) (quoting *Taylor v. Powell*, 7 F.4th 920, 926 (10th Cir. 2021)), *cert. denied*, 143 S. Ct. 2672 (2023). To show that application of this equitable exception is warranted, a petitioner must "present 'new reliable evidence . . . that was not presented at trial.'" *Fontenot v. Crow*, 4 F.4th 982, 1032 (10th Cir. 2021) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).[12] And the petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Perkins*, 393 U.S. at 386 (alteration added) (internal quotation marks omitted) (quoting *Schlup*, 513 U.S. at 329). "This standard requires courts to engage in a counterfactual analysis, determining whether a jury confronted with all the evidence now known would still have convicted the petitioner of the crime charged." *Taylor*, 7 F.4th at 927; *see also House v. Bell*, 547 U.S. 518, 538 (2006) (explaining that a federal habeas court must consider all evidence, "old and new, incriminating and exculpatory," and "must make 'a probabilistic determination about what reasonable, properly instructed jurors would do'" (quoting *Schlup*, 513 U.S. at 329)).

As the Court understands it, Stevens contends that certain exculpatory text messages that the prosecutor allegedly withheld, and that trial counsel did not present to the jury would prove his innocence. Dkt. 1, at 5-8; Dkt. 10, at 8.[13] Stevens's most specific argument appears to be that

---

[12] *Fontenot* clarified that "new" evidence can include evidence that was available before or during trial but that was not presented at trial. 4 F.4th at 1032.

[13] Stevens does not adequately develop his actual-innocence claim in the Petition or the Response, but some exhibits he submitted with the Petition and several of his pro se filings in state postconviction proceedings amplify that claim. *See, e.g.*, Dkt. 1-1, at 35 (referencing text messages between Stevens and M.D. between June 1, 2016, and November 2, 2016, that would "vindicate Mr. Stevens of any wrongdoing"); *id.* at 44-45 (discussing "missing" text messages from October 23, 2016); Dkt. 9-37, at 20 (asserting in postconviction reply brief that text messages from October 1, 2016, would prove that S.D. and M.D. were not with Stevens on that date).

12

certain text messages not presented to the jury would show that he was not alone with the victim, S.D., on October 1, 2016, or October 23, 2016, and that he is therefore innocent. Dkt. 1-1, at 35, 44-45, 50; Dkt. 9-37, at 20. In his application for postconviction relief, Stevens asserted, in relevant part:

> The rest of the text messages that are missing from the date of October 23, 2016 are what prove that the statements made by Defendant, Mr. Stevens, are correct rebutting [S.D.'s] testimony that is inconsistent with the text messages that are still missing from the date of Oct. 23, 2016 (Tr. 114-120). And proving that Kim Burke was there the whole time. . . . [S.D.] never went inside to watch TV on that date of 10-23-2016, he was sitting outside talking to Kim the whole time. There was no time when Defendant, Mr. Stevens was at all alone with [S.D.] in the house boat on October 23, 2016 or October 1, 2016. Therefore, Defendant, Mr. Stevens did not commit a lewd act during that time. And the texts will prove that the District Attorney's statement of this happening on the date of October 1st is incorrect and inconsistent with Kim's testimony in court.

Dkt. 1-1, at 45-46. Even assuming the truth of Stevens's allegations that some text messages not presented to the jury exist and would show that he was not alone with S.D. on October 1, 2016, or October 23, 2016, his actual-innocence claim falls under the crushing weight of the evidence that was presented to the jury at trial.

Both appellate briefs filed in the OCCA show that the following facts were established at trial. In October 2016, S.D., who had just turned eight years old, told his grandmother that he and Stevens had been doing "man things." Dkt. 9-7, at 9; Dkt. 9-8, at 9. S.D. described those things as "walking on the beach and in the woods naked." Dkt. 9-7, at 9. At that time, S.D.'s mother, M.D. had some type of relationship with Stevens and would leave S.D. alone with Stevens when she went to work. *Id.* at 10; Dkt. 9-8, at 8. A few days after S.D. told his grandmother about walking naked in the woods with Stevens, S.D.'s grandmother observed S.D. "messing with his privates" while S.D. was bathing. Dkt. 9-7, at 10; Dkt. 9-8, at 9. When his grandmother told him that was inappropriate, S.D. responded that Stevens "messes with [Stevens's penis] all the time." *Id.* S.D. further explained "that [Stevens] puts lotion on his . . . pee pee," and S.D. made a hand

13

gesture to reenact Stevens's hand motion. Dkt. 9-7, at 10; Dkt. 9-8, at 9. An investigation ensued, and S.D. told a detective that he was sitting on the bed watching television, Stevens was on the other end of the bed, and he saw Stevens rubbing lotion on Stevens's "weenie or wiener." Dkt. 9-7, at 10. S.D. made this same disclosure to a forensic investigator. *Id.*

At trial, S.D. testified that he and Stevens were sitting on Stevens's bed, that Stevens was naked, and that Stevens rubbed his own penis with lotion. Dkt. 9-8, at 8. S.D. demonstrated for the jury the hand motion that he saw Stevens performing. *Id.* S.D. also testified that Stevens asked S.D. to disrobe while Stevens was masturbating. *Id.*; Dkt. 9-7, at 10. S.D. testified that he took off most of his clothes but told the jury, "I left my underwear on, at least." Dkt. 9-8, at 8. The State introduced at trial several text messages between M.D. and Stevens. The messages indicated that M.D. was aware that Stevens routinely masturbated in front of S.D., and that M.D. was complicit in that behavior.[14] *Id.* at 9. For example, in a text message from Stevens to M.D., dated September 15, 2016, Stevens asked M.D. if it "bother[s] her that [Stevens] think[s] it's ok if [S.D.] wanted to masturbate openly." Dkt. 9-7, at 14. In another text message, also dated September 15, 2016, Stevens told M.D. that he would "teach [S.D.] the right times to be nude and masturbate." Dkt. 9-8, at 11. In a text message from M.D. to Stevens, dated October 1, 2016, M.D. stated: "[S.D.] just told me you were rubbing your pee pee with lotion today . . . I really hope he doesn't say that in front of anyone else." *Id.* at 9. Stevens responded to this text by stating, "Tell him not to." *Id.* In a text from Stevens to M.D., also dated October 1, 2016, Stevens asked M.D., "Should

---

[14] As demonstrated by Stevens's allegations in his postconviction appeal brief and exhibits attached thereto, the jury heard testimony, and Stevens was thus aware at the time of trial, that the text messages presented at trial were only a portion of the over 100,000 text messages recovered from Stevens's and M.D.'s phones, and that the total number of text messages recovered from both phones included "messages to all of the contacts on the phone, not just between" M.D. and Stevens. Dkt. 9-37, at 21-22; Dkt. 9-38, at 24-26.

[S.D.] see me playing with [my penis] a little more?" *Id.* at 12.[15]  M.D. also testified at trial that she knew Stevens was masturbating in S.D.'s presence. *Id.* at 9.  M.S. testified at trial that S.D. would have been alone with Stevens on several occasions between August and October 2016. Dkt. 9-38, at 27.

Considering all the evidence—including the "old" and "incriminating" evidence presented at trial and the "new" and purportedly "exculpatory" text messages that Stevens claims would prove he was not with S.D. on October 1, 2016, or October 23, 2016—the Court concludes that "a jury confronted with all the evidence now known would still have convicted [Stevens] of the crime charged." *Taylor*, 7 F.4th at 927.  The Court thus concludes that *Perkins*'s equitable exception does not excuse the untimeliness of the Petition.

**3.**

Based on the foregoing, the Court concludes that equitable tolling is not warranted, and that the equitable exception does not excuse the untimeliness of the Petition.

---

[15] According to the text messages that appellate counsel provided to Stevens in 2018, M.D. responded to Stevens's inquiry as to whether he should masturbate more frequently in S.D.'s presence by saying, "No, I don't think you need to do anymore than you do[.]" Dkt. 9-28, at 7. Other text messages appellate counsel provided to Stevens in 2018 include a message from M.D. to Stevens, dated October 23, 2016, asking, "Naked?," and Stevens's response, "We were for a little bit, a boat came so we got dressed." *Id.* at 4.  This directly contradicts Stevens's assertion that "missing" text messages would prove that he was never alone with S.D. on October 23, 2016. In other messages Stevens sent to M.D. that same day, Stevens remarked, "He likes being naked," and "I do too so it's all good." *Id.*  It is not clear from the record whether these messages were presented at trial or whether these are among the messages that Stevens claims were "exculpatory" and wrongly excluded from trial because they purportedly would have shown that Stevens was not alone with S.D. on October 23, 2016.  Regardless, these messages lend support to appellate counsel's assessment, and the state district court's conclusion, that trial counsel likely made a reasonable strategic decision to argue for the exclusion of most text messages.

15

### III.

For the reasons just discussed, 28 U.S.C. § 2244(d)(1)'s one-year statute of limitations bars relief as to the claims Stevens asserts in the Petition. The Court therefore grants the Motion to Dismiss and dismisses the Petition, with prejudice. And, because Stevens's noncompliance with the statute of limitations constitutes a plain procedural bar, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### IV.

**IT IS THEREFORE ORDERED** that: (1) Respondent's Motion to Dismiss (Dkt. 8) is **granted**; (2) the Petition for Writ of Habeas Corpus (Dkt. 1) is **dismissed with prejudice** as barred by the applicable statute of limitations; (3) a certificate of appealability is **denied**; and (4) a separate judgment shall be entered herewith.

**DATED** this 17th day of December, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE